# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOSEPH MUNDO,

      Plaintiff,

vs.                                                                 No. CIV 25-0136 JB/KK

SHELBY VANDEVER and NAVAJO FAMILY
COURT,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Shelby Vandever's Motion to Set Aside Entry of Default as Void and to Dismiss Due to Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, Failure to State a Claim for Relief and Failure to Exhaust Tribal Remedies, filed April 1, 2025 (Doc. 39)("MTD"). The Court holds a hearing on August 18, 2025. <u>See</u> Clerk's Minutes at 1, filed August 18, 2025 (Doc. 60). The primary issues are: (i) whether the Court should set aside the entry of default, because the Court lacks personal jurisdiction or subject-matter jurisdiction; (ii) whether the Court should dismiss the case, because the Navajo Nation is an indispensable party that possesses sovereign immunity; (iii) whether the Court should dismiss the case, because Plaintiff Joseph Mundo does not exhaust the Tribal court remedies before bringing this action in federal court; and (iv) whether the Court should dismiss the case for failure to state a legally cognizable claim, because the Complaint merely recites legal conclusions. The Court concludes that: (i) the Court sets aside the entry of default, because Plaintiff Joseph Mundo withdraws his opposition to setting it aside; (ii) the Court grants the MTD for lack of subject-matter jurisdiction, because the Navajo Nation retains sovereign immunity yet is an indispensable party; (iii) the Court grants the MTD under the Tribal court exhaustion doctrine, because Mundo has not appealed to the Navajo Nation Supreme Court; and (iv) the Court need not address the

failure to state a claim issue, because dismissal is proper given that the Navajo Nation is an indispensable party and given that Mundo does not comply with the exhaustion requirement. Accordingly, the Court grants the MTD and dismisses the Complaint, filed February 2, 2025 (Doc. 1).

## FACTUAL BACKGROUND

This child custody dispute involves two conflicting family court orders -- one from Florida, and one from the Navajo Nation -- and presents the question whether the Court may resolve the jurisdictional conflict. Mundo is the father of two daughters, both minors, and he resides in Florida. See Vandever v. Mundo, No. 48-2019-DR-1379-O, Final Judgment of Paternity (entered August 13, 2024), filed February 7, 2025 (Doc. 1-1)("Florida Paternity Order"). The children's mother, Defendant Shelby Vandever, resides in Thoreau, New Mexico. Florida Paternity Order at 2. Vandever and the two daughters are enrolled citizens of the Navajo Nation who reside in the Navajo community of Thoreau. See MTD at 2. The dispute over where the daughters may reside has persisted for several years.

On October 31, 2019, Vandever files a Petition to Establish Paternity, Custody, and Child Support in the Navajo Nation Crownpoint Family Court. See MTD at 3. On November 20, 2020, the Navajo Family Court rules on the jurisdiction of the parental custody petition that Vandever files in Navajo Family Court, which conflicts with a paternal custody petition that Mundo files in Florida family court. See Vandever v. Mundo, No. CPFC-DV-000442-2024, Order on Respondent's Motion to Dismiss (Judicial District of Crownpoint, New Mexico, Navajo Nation, entered November 20, 2020), filed February 7, 2025 (Doc. 1-2)("Navajo 2020 MTD Order"). The Navajo Family Court dismisses Vandever's petition for lack of jurisdiction and holds that Mundo's petition "shall govern." Navajo 2020 MTD Order at 1. The Navajo Family Court also grants Mundo immediate temporary custody of his two daughters. Navajo 2020 MTD Order at 1.

On August 13, 2024, a Florida family court awards Mundo and Vandever shared parental custody of both daughters. See Mundo v. Vandever, No. 48-2019-DR-1379-O, Final Judgment of Paternity (Circuit Court of the Ninth Judicial Circuit, Orange County, Florida, entered August 13, 2024), filed February 7, 2025 (Doc. 1-1)("Florida Paternity Order"). The Florida Paternity Order also includes a parenting plan that designates parental responsibility and decision making, in which many visits and obligations are split equally between Mundo and Vandever. Florida Paternity Order at 8-18. On September 9, 2024, the Florida family court orders Vandever to return immediately the two daughters to Mundo's custody in Florida and prohibits their removal from Florida. See Mundo v. Vandever, No. 2019-DR-13793, Order to Return/Pick-Up Minor Child, (Circuit Court of the Ninth Judicial Circuit, Orange County, Florida, entered September 9, 2024), filed February 7, 2025 (Doc. 1-3)("Florida Return Child Order").

On November 12, 2024, Vandever files a domestic abuse petition under the Domestic Abuse Protection Act, 9 N.N.C. §§ 1601-16670(1995)("DAPA"), in Navajo Family Court. See Vandever v. Mundo, No. CPFC-DV-000442-2024, Order Denying Motion to Dismiss (Judicial District of Crownpoint, New Mexico, Navajo Nation, entered January 11, 2025), filed February 7, 2025 (Doc. 1-4)("Navajo 2025 MTD Order"). The petition includes two police officer reports from different locations on the same day: first, in Thoreau and the second in Gallup, New Mexico. Police Request at 1 (dated October 24, 2024), filed February 7, 2025 (Doc. 1-6)("Thoreau Report"). Criminal Sexual Contact of Minor at 1 (dated October 24, 2024), filed February 7, 2025 (Doc. 1-6)("Gallup Report"). The Thoreau Report recounts two concerning statements: (i) one daughter tells officers that she feels unsafe with Mundo and does not want to go with him; and (ii) the same daughter reports that Mundo touches her inappropriately near her private parts. Thoreau Report at 3, 7.

On November 13, 2024, the Navajo Family Court issues a Temporary Protection Order, without notice, and requests further agency investigation into the allegation of sexual abuse of a minor child within Vandever's domestic abuse petition.  See Navajo 2025 MTD Order at 2.  On January 11, 2025, the Navajo Family Court asserts Tribal sovereignty and denies Mundo's motion to dismiss Vandever's domestic abuse petition.  See Navajo 2025 MTD Order at 1.  In ten pages, the Navajo Family Court explains that it has jurisdiction over the domestic abuse petition under DAPA, the Navajo Rules of Domestic Violence Proceedings, and because it generally has jurisdiction over Navajo children "wherever they may reside."  Navajo 2025 MTD Order at 3-4. The Navajo 2025 MTD Order also states that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which confers exclusive jurisdiction to Florida, does not apply, because the Navajo Nation does not adopt the UCCJEA.  Navajo 2025 MTD Order at 5.  The Navajo Family Court also rejects Mundo's claims of res judicata and collateral estoppel, forum shopping, failure to state a claim, and violation of professional conduct.  See Navajo 2025 MTD Order at 6-9.  Finally, the Navajo Family Court explains that it does not enforce the Florida Paternity Order, nor any other existing State or Tribal court orders, because Vandever "raised the new allegation of sexual abuse against a Navajo child which was not considered by the previous state and tribal court proceedings.  This allegation of abuse is serious and necessitates reviewing the custody issue by this court."  Navajo 2025 MTD Order at 10.

On December 2, 2024, Mundo files his Petition for Registration of Foreign Judgment of Paternity and Parenting Plan in New Mexico State Court.  See Mundo v. Vandever, No. D-1113-DM-2024-192 (Doc. 39-6)("NM State Court Petition").  In the NM State Court Petition, Mundo asks the court to domesticate the Florida court order.  See NM State Court Petition at 1.

## PROCEDURAL BACKGROUND

Mundo files the Complaint seeking to enjoin the Navajo Family Court from asserting Tribal sovereignty, arguing that the exercise of sovereignty conflicts with the Florida Paternity Order. See Amended Complaint for Declaratory Judgment and Injunctive Relief ¶ 19, at 5, filed February 10, 2025 (Doc. 4)("Complaint"). Mundo requests two forms of relief: (i) a declaratory judgment that the Florida Paternity Order is enforceable and that the Navajo Family Court lacks jurisdiction over the DAPA petition; and (ii) an injunction prohibiting the Navajo Family Court from asserting jurisdiction over the DAPA petition. Complaint ¶¶ 18-22, at 5-7.

On April 1, 2025, Vandever files her MTD. See MTD at 1. First, she argues that the entry of default is void, because the Court lacks personal jurisdiction, as service of process is not effectuated under Navajo Nation law. See MTD at 13-14. Second, Vandever contends that the entry of default is void, because the Court lacks subject-matter jurisdiction. See MTD at 15. She asserts that the Court lacks subject-matter jurisdiction, because the Navajo Nation is immune from suit and is a necessary party. See MTD at 15-18. On that basis, she also seeks dismissal of Mundo's Complaint. See MTD at 18. Third, Vandever asks the Court to dismiss Mundo's Complaint, because he failed to exhaust the Tribal court remedies under the Tribal court exhaustion doctrine. See MTD at 25-26. Finally, she asks the Court to dismiss Mundo's Complaint, because it fails to state a legally cognizable claim for relief, as it merely references her role as a private party in domestic-violence custody proceedings. See MTD at 25.

On April 14, 2025, Mundo files the Plaintiff's Response in Opposition to Defendant Shelby Vandever's Motion to Set Aside Entry of Default and Dismiss (Doc. 43)("Response"). In the Response, Mundo argues that the Court has personal jurisdiction, because the Navajo Nation service-of-process rules do not bind federal courts. See Response at 4. He further contends that the Court has subject-matter jurisdiction despite the Navajo Nation's sovereign immunity, because

the Navajo Nation is not an indispensable party.  See Response at 8.  Mundo also asserts that the

Tribal court exhaustion doctrine does not apply, as Vandever invokes the Tribal court in bad faith

to circumvent the Florida state court decree.  See Response at 5.  Finally, Mundo maintains that

his Complaint states a legally cognizable claim under both the Full Faith and Credit Clause 28

U.S.C.A. § 1738 and the Parental Kidnapping Prevention Act.  See Response at 10.

On April 28, 2025, Vandever files Defendant Vandever's Reply to Plaintiff's Response in

Opposition to Defendant Vandever's Motion to Set Aside Entry of Default and Dismiss (Doc.

45)("Reply").  In the Reply, Vandever reiterates that the entry of default is void because of both a

lack of personal jurisdiction and a lack of subject-matter jurisdiction.  See Reply at 3-4.  She further

argues that Mundo's claim that the Tribal court exhaustion doctrine is inapplicable because, she

acts in bad faith, is incorrect, given that no evidence suggests that she acts in bad faith.  See Reply

at 8.

On August 27, 2025, Mundo files Plaintiff's Omnibus Notice (Doc. 59)("Omnibus

Notice").  In the Omnibus Notice, Mundo withdraws the following motions: (i) the Plaintiff's

Motion for Leave to File an Amended Complaint, filed February 24, 2025 (Doc. 19); (ii) the

Plaintiff's Motion for Default and Attorney's Fees, filed March 18, 2025 (Doc. 34); and (iii) the

Plaintiff's Motion for Leave to File Surreply, filed April 30, 2025 (Doc. 47).  See Omnibus Notice

at 1.  In addition, Mundo withdraws his opposition to the Navajo Nation's Motion to Dismiss, filed

March 12, 2025 (Doc. 24). See Omnibus Notice at 1.

## LAW REGARDING RULE 12(B)(1) MOTIONS TO DISMISS

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those

cases authorized and defined in the Constitution of the United States of America which have been

entrusted to them under a jurisdictional grant by Congress."  Henry v. Off. of Thrift Supervision,

43 F.3d 507, 511 (10th Cir. 1994)(citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534,

541 (1986); United States v. Nixon, 418 U.S. 683 (1974); Tafoya v. U.S. Dep't of Just., Law Enf't Assistance Admin., 748 F.2d 1389, 1390 (10th Cir. 1984)).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Because "federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction."  U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).  Rule 12(b)(1) allows a party to raise, by motion, the defense of the court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).

The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). On a facial attack, a plaintiff enjoys safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). When the attack is factual, however,

> a district court may not presume the truthfulness of the complaint's factual allegations. [Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)]. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). Id.; Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir.)[("Wheeler")], cert. denied, 484 U.S. 986 ... (1987). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. Wheeler, 825 F.2d at 259 n.5.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  See World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1086-87 (D.N.M. 2019)(Browning, J.); Alto Eldorado

Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M.

March 11, 2009)(Browning, J.), aff'd on other grounds by 634 F.3d 1170 (10th Cir. 2011).  The

United States Court of Appeals for the Fifth Circuit states:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its
> very power to hear the case -- there is substantial authority that the trial court is free
> to weigh the evidence and satisfy itself as to the existence of its power to hear the
> case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and
> the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond a complaint's allegations to

challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or

other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64

F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d at 1003.  In those instances, a

court's reference to evidence outside the pleadings does not convert necessarily the motion to a

rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler

v. Hurdman, 825 F.2d at 259 n.5).  Where the court determines, however, that jurisdictional issues

which a rule 12(b)(1) motion raises are intertwined with the case's merits, the court should resolve

the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180

F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).

"When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the

underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect

of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir.

2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

"When subject-matter jurisdiction is dependent upon the same statute which provides the

substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." Garcia v. United States, No. CIV 08-0295 JB/WDS, 2009 WL 1300938, at *9 (D.N.M. March 30, 2009)(Browning, J.)(citing Wheeler v. Hurdman, 825 F.2d at 259; Holt v. United States, 46 F.3d at 1003).

## LAW REGARDING REQUIRED PARTIES UNDER RULE 19

The rules distinguish between required and permissive parties. Rule 19 provides the requirements for joining required parties. Rule 19(a) states:

(a)    Persons Required to Be Joined if Feasible.

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)    as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

Fed. R. Civ. P. 19(a).  If a required party is not already joined, then "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).  If the required party cannot be joined, then a

court must consider the factors in rule 19(b) to determine whether it should dismiss the case or should allow the case to proceed with the existing parties:

> (1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complaint will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Earlier case law generally describes those parties who should be joined under rule 19(a) as necessary parties, and those necessary parties whose absence requires that a case be dismissed under rule 19(b) as indispensable parties, or necessary and indispensable parties. The 2007 amendments to the rules changed the term necessary parties to required parties. These amendments were stylistic only, however, and much of the case law interpreting rule 19 predates the amendments and refers to necessary and indispensable parties.

1.    **Incomplete Relief.**

One basis on which a party may be a required or necessary party is if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). A court is able to afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested . . . relief." Sac and Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1258 (10th Cir. 2001). As Moore's Federal Practice explains, this provision "requires joinder when nonjoinder precludes the court from effecting relief not in some overall sense, but between extant parties." 4 J. Moore & R. Freer, Moore's Federal Practice § 19.03[2][b], at 19-39 (3d ed. 2009). "Properly interpreted, the Rule is not invoked simply because some absentee may cause future litigation. . . . The fact that the absentee might later frustrate the outcome

of the litigation does not by itself make the absentee necessary for complete relief."  4 J. Moore & R. Freer, supra § 19.03[2][b], at 19-39 to 19-41.

Cases discussing rule 19(a)'s complete-relief segment look at whether a court can grant a plaintiff or other claimant complete relief without adding parties.  For example, in Salt Lake Tribune Publishing Co., LLC v. AT & T Corp., 320 F.3d 1081 (10th Cir. 2003), the United States Court of Appeals for the Tenth Circuit analyzes whether the district court can grant the plaintiff all the relief that it is seeking on its claims.  See 320 F.3d at 1097.  In Associated Dry Goods Corp. v. Towers Financial Corp., 920 F.2d 1121 (2d Cir. 1990), the United States Court of Appeals for the Second Circuit holds that an absent party is a necessary party to afford a counterclaimant complete relief, because the counter-defendant cannot comply with the injunction that the counterclaimant seeks without the absent party's consent.  See 920 F.2d at 1124.  In Champagne v. City of Kansas City, 157 F.R.D. 66 (D. Kan. 1994)(Lungstrum, J.), a number of paramedics file suit against the City of Kansas City, alleging overtime-pay violations.  See 157 F.R.D. at 66.  The City seeks to join as plaintiffs other paramedics who had not sued.  See 157 F.R.D. at 67. The district court holds:

> Complete relief refers to relief as between the persons already parties to the action and not as between a present party and the absent party whose joinder is sought. The named plaintiffs in the present action would be able to obtain all the relief requested without the joinder of four additional paramedics. Defendant's assertion that all persons whose claims are identical to the plaintiffs should be joined is not within the meaning of complete relief.

Champagne v. City of Kan. City, 157 F.R.D. at 67.

## 2.    **Inconsistent Obligations.**

A party is also a required or necessary party if the "person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). This clause

"compels joinder of an absentee to avoid inconsistent *obligations,* and not to avoid inconsistent

adjudications. It is not triggered by the possibility of a subsequent adjudication that may result in

a judgment that is inconsistent as a matter of logic." 4 J. Moore & R. Freer, supra § 19.03[4][d],

at 19-59 to 19-60 (emphasis in original). The United States Court of Appeals for the First Circuit's

description of the rule reflects that understanding:

> "Inconsistent obligations" are not . . . the same as inconsistent adjudications or
> results. Inconsistent obligations occur when a party is unable to comply with one
> court's order without breaching another court's order concerning the same incident.
> Inconsistent adjudications or results, by contrast, occur when a defendant
> successfully defends a claim in one forum, yet loses on another claim arising from
> the same incident in another forum. Unlike a risk of inconsistent obligations, a risk
> that a defendant who has successfully defended against a party may be found liable
> to another party in a subsequent action arising from the same incident -- i.e., a risk
> of inconsistent adjudications or results -- does not necessitate joinder of all of the
> parties into one action pursuant to Fed. R .Civ. P. 19(a).

Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998).

The United States Court of Appeals for the Ninth Circuit adopts the First Circuit's approach

to rule 19(a)(1)(B)(ii). See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v.

California, 547 F.3d 962, 976 (9th Cir. 2008). Accordingly, the Ninth Circuit holds that there is

no risk of inconsistent obligations in a situation in which the State of California might have to

adhere to one interpretation of a compact when dealing with particular Indian Tribes, while

following a different interpretation in its dealings with other Tribes, because California could deal

consistently with each Tribe according to the different judgments. See Cachil Dehe Band of

Wintun Indians of the Colusa Indian Cmty. v. California, 547 F.3d at 976. Other Courts of

Appeals, as well as lower courts and leading treatises, have all taken the same approach. See, e.g.,

Boone v. General Motors Acceptance Corp., 682 F.2d 552, 554 (5th Cir. 1982)(holding that, where

"multiple litigation might result . . . [but there is] little possibility of inconsistent obligations," rule

19(a) is not implicated); <u>Field v. Volkswagenwerk AG</u>, 626 F.2d 293, 301 (3d Cir. 1980)(same); <u>Fisherman's Harvest, Inc. v. United States</u>, 74 Fed. Cl. 681, 688-89 (2006)(following <u>Delgado v. Plaza Las Americas, Inc.</u>); 4 J. Moore & R. Freer, <u>supra</u> § 19.03[4][d], at 19-59 to 19-61 (stating that inconsistent obligation occur only when a party cannot obey two conflicting order from different courts).  While the Tenth Circuit has not devoted extended discussion to inconsistent obligations, it has given, as an example of inconsistent obligations, a hypothetical scenario in which a federal district court orders a defendant to transfer stock to the plaintiff while a state court orders the same defendant to transfer the same stock to a different party who is not involved in the federal litigation.  <u>See</u> <u>Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.</u>, 320 F.3d at 1098.

## <u>LAW REGARDING TRIBAL COURT EXHAUSTION DOCTRINE</u>

The Supreme Court requires a party to exhaust Tribal Court remedies even in cases where a federal court has jurisdiction concurrent with a Tribal Court and even where non-Indian parties are involved.  <u>See</u> <u>National Farmers Unions Ins. v. Crow Tribe of Indians</u>, 471 U.S. 845, 857 (1985)(federal question jurisdiction)("<u>National Farmers</u>"); <u>Iowa Mutual</u>, 480 U.S. 9, 18 (1987)(diversity jurisdiction)("<u>Iowa Mutual</u>").   The Tribal Court Exhaustion Doctrine is an integral part of the federal government's longstanding policy of promoting Tribal self-government. <u>See</u> <u>National Farmers</u>, 471 U.S. at 856; <u>Iowa Mutual</u>, 480 U.S. at 15-16.  The Supreme Court in <u>National Farmers</u> and <u>Iowa Mutual</u> gives three reasons for the Tribal Court Exhaustion Doctrine. <u>See</u> <u>Navajo Nation v. Intermountain Steel Bldgs., Inc.</u>, 42 F. Supp. 2d 1222, 1226 (D.N.M. 1999)(Parker, J.).  The first reason is Congress' commitment to the policy of encouraging Tribal self-government.   <u>See</u> <u>National Farmers</u>, 471 U.S. at 853-57; <u>Iowa Mutual</u>, 480 U.S. at 14 (referring to "the Federal Government's longstanding policy of encouraging tribal self-government").  The Supreme Court in <u>Iowa Mutual</u> observes that "[t]ribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their

- 13 -

development." 480 U.S. at 14-15. The Supreme Court also expresses concern that "[a] federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of Tribal Courts." <u>Iowa Mutual</u>, 480 U.S. at 15. <u>See</u> <u>Smith v. Moffett</u>, 947 F.2d at 444 (referring to federal government's "strong interest in promoting tribal sovereignty, including the development of Tribal Courts").

The Tribal Court Exhaustion Doctrine's second purpose is that "the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." <u>National Farmers</u>, 471 U.S. at 856. In <u>Iowa Mutual</u>, the Supreme Court similarly observes that federal courts should avoid "direct competition" with Tribal Courts by staying or dismissing cases where both the federal and Tribal Court may possess concurrent jurisdiction. 480 U.S. at 15-16. Third, the Tribal Court Exhaustion Doctrine allows Tribal Courts to "provide other courts with the benefit of their expertise in such matters in the event of further judicial review," such as in matters of Tribal law. <u>National Farmers</u>, 471 U.S. at 857.

There are three exceptions to the Tribal Court Exhaustion Doctrine's operation. <u>See</u> <u>National Farmers</u>, 471 U.S. at 856 n.21. First, exhaustion is not necessary when Tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith, . . . ." <u>National Farmers</u>, 471 U.S. at 856 n.21. <u>National Farmers</u> imports the bad-faith exception from <u>Juidice v. Vail</u>, 430 U.S. 327 (1977). <u>See</u> <u>Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.</u>, 715 F.3d 1196, 1201 (9th Cir. 2013).

> In *Juidice*, the state court issued a commitment order, and the defendant was arrested after he failed to attend a deposition, appear for a hearing, and pay a fine. Rather than appeal his case in state court, he filed a 42 U.S.C. § 1983 claim in district court. Upon review, the Supreme Court held that a federal court must abstain from making a determination during a state proceeding based on the principle of comity unless the proceeding was motivated by a desire to harass or was conducted in bad faith. The Court looked to the *proceeding* and the court

- 14 -

overseeing that proceeding to make its determination. The defendant there alleged bad faith by the plaintiffs, which the Court explicitly held insufficient to trigger the exception.

Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d at 1201 (emphasis in original)(citing Juidice v. Vail, 430 U.S. at 328-30, 334-38).  The Ninth Circuit interprets the bad-faith exception to the Tribal Court Exhaustion Doctrine, therefore, to require bad faith on the part of the court overseeing the proceeding at issue or bad faith inherent in the proceeding to avoid the Tribal court exhaustion requirement.  See Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d at 1201.  A party exhibiting bad faith to the case is insufficient.  See Juidice v. Vail, 430 U.S. at 338; Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d at 1201-02 ("Ultimately, where a tribe has an established judicial system as here, the interpretation most faithful to National Farmers is that it must be the Tribal Court that acts in bad faith to exempt the party from exhausting available Tribal Court remedies.").

The second exception to the Tribal Court Exhaustion Doctrine is "where the action is patently violative of express jurisdictional prohibitions."  National Farmers, 471 U.S. at 856 n.21. The federal court overseeing the proceeding must address whether the federal law under which the plaintiff brings claims "so obviously preempts tribal jurisdiction" as patently to violate express jurisdictional prohibitions, rendering abstention in favor of Tribal Court Exhaustion inappropriate. Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1502 (10th Cir. 1997)(citing National Farmers, 471 U.S. at 856 n.21, 105 S.Ct. 2447).  To invoke this exception to the Tribal Court Exhaustion doctrine, the party seeking the exception must make a substantial showing.  See Kerr-McGee Corp. v. Farley, 115 F.3d at 1502 (citing Iowa Mutual, 480 U.S. at 19 n.12)(concluding that party's assertion that "tribal jurisdiction over outsiders is questionable at best" could not defeat the Tribal exhaustion requirement).  The Tenth Circuit states that "Tribal Courts rarely lose the first opportunity to determine jurisdiction because of an 'express jurisdictional prohibition.'"  Kerr-

McGee Corp. v. Farley, 115 F.3d at 1502 (quoting National Farmers, 471 U.S. at 856 n.21).  The Tenth Circuit notes that the second exception to the Tribal Court Exhaustion Doctrine is typically present in two situations: when the federal court has exclusive jurisdiction, see Kerr-McGee Corp. v. Farley, 115 F.3d at 1502 (citing Blue Legs v. Bureau of Indian Affairs, 867 F.2d 1094, 1097-98 (8th Cir. 1989)), or where sovereign immunity forecloses Tribal jurisdiction, see Kerr-McGee Corp. v. Farley, 115 F.3d at 1502 (citing United States v. Yakima Tribal Ct., 806 F.2d 853, 860-61 (9th Cir. 1986)).

The Tribal court exhaustion doctrine's third exception is "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."  National Farmers, 471 U.S. at 856 n.21.  On the futility exception, the Tenth Circuit holds that "'speculative futility is not enough to justify federal jurisdiction.' The [plaintiff] cannot simply assert that it is not subject to Tribal Court jurisdiction; rather, it must actually seek adjudication of this issue in Tribal Court."  Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d 1166, 1170 (10th Cir. 1992)(quoting White v. Pueblo of San Juan, 728 F.2d 1307, 1313 (10th Cir. 1984)).  The futility "exception to sovereign immunity clearly does not apply where a party voluntarily chooses not to pursue its case in Tribal Court."  Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d at 1170.

The Tenth Circuit holds in Mustang Prod. Co. v. Harrison, 94 F.3d 1382 (10th Cir. 1996), that, after exhaustion of Tribal Court remedies, if the federal district court has concurrent jurisdiction over a case, it "should review Tribal Courts' findings of fact for clear error and conclusions of law de novo."  Mustang Prod. Co. v. Harrison, 94 F.3d at 1384.  Accord Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1300 (8th Cir. 1994)("[T]he district court should review the Tribal Court's findings of fact under a deferential, clearly erroneous standard. The Tribal Court's determinations of federal law should be reviewed de novo while determinations of Tribal law should be accorded more deference.").

- 16 -

The Tenth Circuit expansively applies the Tribal exhaustion doctrine with respect to issues other than the scope of the Tribal Court's jurisdiction.  See Hartman v. Kickapoo Tribe Gaming Comm'n, 176 F.Supp.2d 1168, 1180 (D. Kan. 2001)(Saffels, J.).  The Tenth Circuit routinely requires Tribal Court exhaustion.  See Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1233 (10th Cir. 2003); Texaco Inc. v. Hale, 81 F.3d 934, 937 (10th Cir. 1996); Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d at 1171; Smith v. Moffett, 947 F.2d at 444 ("[T]he federal courts have acknowledged the need to allow Tribal Courts to make an initial determination of tribal jurisdiction over matters arising on Indian reservations.").  The First, Second, Fifth, Eighth, and Ninth Circuits likewise require exhaustion in cases arising on Indian reservations.  See, e.g., Gaming World Int'l Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 851-52 (8th Cir. 2003); Bank One, 281 F.3d at 515 ("The policy which animates the tribal exhaustion doctrine . . . subordinates the federal court's obligation to exercise its jurisdiction to the greater policy of promoting tribal self-government."); Ninigret, 207 F.3d at 33-35; Allstate Indem. Co. v. Stump, 191 F.3d 1071, 1073-75 (9th Cir. 1999); Basil Cook Enters. Inc. v. St. Regis Mohawk Tribe, 117 F.3d 61, 66-67 (2d Cir. 1997)("As long as a tribal forum is arguably in existence, as a general matter, we are bound by National Farmers to defer to it."); Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412, 1421 (8th Cir. 1996).  Judge Parker likewise adhered to the principles of National Farmers and of Iowa Mutual in requiring exhaustion of Tribal Court remedies.  In Navajo Nation v. Intermountain Steel Buildings, Inc., Judge Parker sua sponte requires exhaustion of Tribal Court remedies "even when no action is pending in the Tribal Court and Indian plaintiffs seek to invoke federal court subject matter jurisdiction."  42 F. Supp. 2d at 1227.  Judge Parker states that, "[w]hen the dispute at issue is a reservation affair, . . . comity concerns 'almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum.'"  42 F.

Supp. 2d at 1226 (quoting <u>Texaco, Inc. v. Zah</u>, 5 F.3d 1374, 1378 (10th Cir. 1993)).  Judge Parker

states:

> It is difficult to conceive how tribal self-government and self-determination will be advanced by the exercise of federal court jurisdiction over a matter involving the Navajo Nation, a Navajo commercial entity, and a contract between these Navajo parties and a non-Indian defendant to construct a Navajo-owned building located on Navajo land within the boundary of the Navajo Nation. This is especially true because the parties disagree about the applicability of Navajo law and custom. . . .
>
> . . . .
>
> Moreover, if the Navajo Tribal Court reached the merits of the action, a federal court would have the benefit of the Navajo Tribal Court's prior interpretation of Navajo law and customs that may apply to this case.

<u>Navajo Nation v. Intermountain Steel Bldgs., Inc.</u>, 42 F.Supp.2d at 1229-30.  <u>Montana</u>, <u>Strate v.

A-1 Contractors</u>, and <u>Hicks</u> concern Tribal jurisdiction over non-Indians, as have virtually all cases

that have not required exhaustion.  <u>See</u>, <u>e.g.</u>, <u>Burlington N. R.R. v. Red Wolf</u>, 196 F.3d 1059, 1062,

1065 (9th Cir. 1999); <u>Mont. Dep't of Transp. v. King</u>, 191 F.3d 1108, 1113 (9th Cir. 1999).

## <u>ANALYSIS</u>

The Court grants Vandever's MTD.  First, the Court sets aside the entry of default, because

Mundo withdraws his opposition to that request.  Second, dismissal is warranted, because the

Navajo Nation retains sovereign immunity and is an indispensable party under rule 19.  Third,

dismissal is also proper, because Mundo fails to exhaust the Tribal court remedies as the Tribal

Court Exhaustion Doctrine requires.  Finally, the Court need not reach Vandever's failure to state

a claim argument, as dismissal is appropriate under both rule 19 and the Tribal Court Exhaustion

Doctrine.  Accordingly, the Court grants the MTD and dismisses Mundo's Complaint.

## I.    <u>THE COURT SETS ASIDE THE ENTRY OF DEFAULT</u>.

In the MTD, Vandever argues that the Court should set aside the entry of default because

the court lacks personal jurisdiction and subject-matter jurisdiction.  <u>See</u> MTD at 13-16.  In his

Response, Mundo argues that the entry of default is valid and explains why the Court has both personal jurisdiction and subject-matter jurisdiction.  See Response at 1-4.   Nevertheless, at the August 18, 2025, hearing, Mundo withdraws his opposition to the Court setting aside the default so the Court could reach a decision on the merits.  See Hearing Tr. at 65:1-9 (Court, Jackson).[1] Following the hearing, Mundo files his Omnibus Notice that withdraws the Plaintiff's Motion for Default and Attorney's Fees.  See Omnibus Notice at 1.  The Court therefore sets aside the entry of default.

## II.     VANDEVER SHOWS THAT THE NAVAJO NATION IS AN INDISPENSABLE PARTY UNDER RULE 19 AND DISMISSAL IS THEREFORE PROPER.

Vandever contends that the Court must dismiss the case for lack of subject-matter jurisdiction, because the Navajo Nation is immune from suit and the action cannot proceed in its absence under rule 19.  For dismissal to be proper under rule 19, three conditions must be present: (i) the Navajo Nation must possess sovereign immunity from suit; (ii) the Navajo Nation must be a necessary party to the litigation under rule 19(a); and (iii) the Navajo Nation also must be indispensable such that, in equity, the action cannot proceed in its absence under rule 19(b).  First, the Court concludes that the Navajo Nation possesses sovereign immunity from suit, because it has not waived its immunity.  Second, the Navajo Nation is a necessary party, because it has a substantial interest in this litigation that lacks protection if it is absent.  Third, the equities favor dismissal, as principles of Tribal sovereignty are afforded great weight.

### A.     THE NAVAJO NATION POSSESSES SOVEREIGN IMMUNITY FROM SUIT.

Vandever argues that the Navajo Nation possesses sovereign immunity and therefore is immune from this lawsuit.  See MTD at 16.  She contends that Tribal sovereign immunity is

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

"[a]mong the core aspects of sovereignty that tribes possess."  MTD at 16 (quoting <u>Michigan v.</u> <u>Bay Mills Indian Cmty.</u>, 572 U.S. 782, 788 (2014)).  Vandever further explains that the Navajo Nation has not waived its sovereign immunity and thus may not be a party to this lawsuit.  <u>See</u> MTD at 16 (citing <u>Michigan v. Bay Mills Indian Cmty.</u>, 572 U.S. at 756 (the Supreme Court has "time and again . . . dismissed any suit against a tribe absent congressional authorization (or a waiver).")).  Mundo agrees that the Navajo Nation possesses sovereign immunity and that the Court should dismiss the Navajo Nation from this lawsuit.  <u>See</u> Omnibus Notice at 1 ("Plaintiff hereby withdraws its opposition to the Navajo Nation's Motion to Dismiss, Doc. 24. Plaintiff does not object to Navajo Nation's request to dismiss the claims against Navajo Family Court without prejudice.").  The Court therefore concludes that the Navajo Nation possesses sovereign immunity and that the Court must be dismiss the Navajo Nation from this action.

## B.    THE NAVAJO NATION IS A NECESSARY PARTY TO THE LITIGATION.

Vandever contends that the Navajo Nation is a necessary party, because it has an interest in protecting its Tribal members.  <u>See</u> MTD at 17.  A party is necessary to a suit if "it claims an interest relating to the subject of the action and is so situated that the disposition of the action in its absence may . . . as a practical matter impair or impede its ability to protect that interest."  Fed. R. Civ. P. 19(a).  Vandever argues that the Navajo Nation has an elevated interest here because the protection order and custody petitions concern two minor Navajo children residing on the Navajo Nation reservation.  <u>See</u> Reply at 5.  She concludes that, if the Navajo Nation is not deemed necessary, its ability to protect those interests will be impeded, as the litigation prejudices the Navajo Nation's self-governance, the jurisdiction of its courts, and the welfare of Navajo children. <u>See</u> Reply at 5.  The Court agrees.

The Tenth Circuit is no stranger to finding Tribes necessary parties under rule 19.  In <u>Citizen</u> <u>Potawatomi Nation v. Norton</u>, 248 F.3d 993 (10th Cir. 2001), the Tenth Circuit holds that the Tribe

is a necessary party, because the action could alter the future funding for the Tribes that are not in the lawsuit. See 248 F.3d at 997-98. In Haynes, Trustee for Paul B. Haynes Family Trust v. Bernhardt, 499 F. Supp. 3d 1071 (N.D. Okla. 2020)(Dowdell, J.), the Honorable John E. Dowdell, United States District Court Judge for the Northern District of Oklahoma, concludes that the Tribe has a sovereignty interest under rule 19 in maintaining its sovereignty and promoting the economic development of its reservation. See 499 F. Supp. 3d at 1077. Similarly, in Enterprise Management Consultants, Inc. v. U.S. ex rel. Hodel, 883 F.2d 890 (10th Cir.), the Tenth Circuit determines that the Tribe is a necessary party, because the action affects the Tribe's interest in the disputed contract, and it also "effectively abrogate the tribe's sovereign immunity by adjudicating its interest in that contract without consent." 883 F.2d at 894. Finally, in Oklahoma v. Tyson Foods, Inc., 258 F.R.D. 472 (N.D. Okla. 2009)(Frizzell, J.), the Tribe asserts an interest in litigation involving pollution of the Illinois River, which the Tribe's Code seeks to protect. See 258 F.R.D. at 477. The Honorable Gregory K. Frizzell, United States District Court Judge for the Northern District of Oklahoma, concludes that the Tribe having a law that seeks to prevent the harm that occurred gave it an interest. Oklahoma v. Tyson Foods, Inc., 258 F.R.D. at 477.

The Navajo Nations interest in this case lies within the heartland of this precedent. Currently before the Navajo Family Court is Vandever's domestic abuse petition. See Navajo 2025 MTD Order at 1. The Navajo Family Court explains that is has jurisdiction over the domestic abuse petition under its own laws -- namely, the DAPA and the Navajo Rules of Domestic Violence Proceedings -- and because it generally has jurisdiction over Navajo children "wherever they may reside." Navajo 2025 MTD Order at 3-4. Mundo's Complaint seeks: (i) a declaratory judgment that the Florida Paternity Order is enforceable and the Navajo Family Court lacks jurisdiction over the DAPA petition; and (ii) an injunction prohibiting the Navajo Family Court from asserting jurisdiction over that petition. See Complaint ¶¶ 18-22, at 5-7. In essence, Mundo

asks this Court to enforce a Florida order and to enjoin the Navajo Nation from exercising jurisdiction over its own members.  See Complaint ¶¶ 18-22, at 5-7.  As in Oklahoma v. Tyson Foods, Inc., where the Tribe has an interest, because its laws directly govern the subject of the dispute, the Navajo Nation has laws protecting its members from domestic violence, and therefore has a direct and substantial interest in this litigation.  It is difficult to imagine circumstances in which the Navajo Nation would not have an interest in such an action.[2]

Mundo nevertheless argues that the Navajo Nation is not a necessary party.  See Response at 6.  He does not contend, however, that the Navajo Nation lacks an interest in this litigation. Instead, he argues that Vandever "is a private litigant who cannot simply adopt the Navajo Nation's sovereign immunity."  Response at 6.  This argument misunderstands Vandever's position. Vandever does not assert sovereign immunity in her personal capacity; rather, she argues that the Navajo Nation possesses sovereign immunity and is a necessary party, requiring dismissal of the Complaint.  The Court therefore concludes that the Navajo Nation is a necessary party under rule 19(a).

## C.    EQUITY FAVORS DISMISSAL OF THE COMPLAINT.

Vandever next argues that, in equity, the rule 19(b) factors favor dismissal, because great weight is given to a Tribe's interest in maintaining its sovereignty.  In determining whether a party is indispensable, the court must decide whether, in "equity and good conscience," the action can

---

[2] A law review article explains:

Custody actions involving Indian children and domestic violence survivors are of enormous importance to not only the parties themselves but also to the tribes. Adjudication of these matters and the ability of tribes to exercise jurisdiction over them has implications for tribal sovereignty, for the effective protection of trial members from violence, and for tribal cultural preservation and integrity.

Joy Barber, Race to Jurisdiction: Forum Determination in DV-Related Child Custody Actions When Survivors Flee Across Reservation Lines, 82 Mont. L. Rev. 259, 264 (2021).

continue without the party.  Citizen Potawatomi Nation v. Norton, 248 F.3d at 1000.  In making

this determination, the court must weigh: (i) the extent a judgment rendered in a person's absence

might be prejudicial to that person or those already parties; (ii) the extent to which, by protective

provisions in the judgment, by the shaping of relief, or other measures, the court can lessen or

avoid the prejudice; (iii) whether a judgment rendered in the person's absence will be adequate;

and (iv) whether the plaintiff or cross-complaint will have an adequate remedy if the action is

dismissed for nonjoinder.  See Fed. R. Civ. P. 19(b).  There is a "strong policy favoring dismissal

when a court cannot join a tribe because of sovereign immunity."  Citizen Potawatomi Nation v.

Norton, 248 F.3d at 1001 (citing David v. United States, 192 F.3d 951, 960 (10th Cir. 1999).

Looking to the first factor -- the extent a judgment rendered in the Navajo Nation's absence

would prejudice the parties -- it favors dismissal.  Vandever neither represents the Navajo Nation

nor can she protect its interest.  Any decision that the Court renders without the Navajo Nation will

prejudice the Nation's sovereignty, including its courts' jurisdiction over domestic-violence and

custody matters, and Navajo children's welfare.  Mundo, of course, has an interest in protecting

his rights as a father.  Although the Court is sympathetic to that pursuit, Tenth Circuit precedent

requires it to give greater weight to the Navajo Nation's sovereign interest.  See Enter. Mgmt.

Consultants Inc. v. United States, 883 F.2d at 894 (explaining that, when a necessary party under

rule 19(a) is immune from suit, there is very little room for balancing the other factors in rule

19(b), because immunity is one of those compelling interests by itself).

As for the second factor -- the extent which shaping relief can lessen the prejudice -- the

Court identifies no way to mitigate the prejudice to the Navajo Nation.  Again, Mundo's Complaint

seeks: (i) a declaratory judgment that the Florida Paternity Order is enforceable and the Navajo

Family Court lacks jurisdiction over the DAPA petition; and (ii) an injunction prohibiting the

Navajo Family Court from asserting jurisdiction over that petition.  See Complaint ¶¶ 18-22, at 5-

7. Any relief that the Court fashions necessarily affects the Navajo Family Court's authority to adjudicate matters involving Navajo children and domestic violence -- issues that lie at the core of the Nation's sovereignty and self-governance. Because the requested relief directly implicates the Navajo Nation's sovereign interests, the Court cannot shape the relief to avoid prejudice to the Nation.

For the same reason, the third factor -- whether a judgment in the Navajo Nation's absence is adequate -- also favors dismissal. The issues at the center of this case concern the Navajo Nation's governance, the jurisdiction of its courts, and the protection of its children. The Court cannot issue a judgment that adequately protects those interests without the Navajo Nation's participation.

The final factor -- whether the plaintiff has an adequate remedy if the Court dismisses the -- is the strongest factor supporting Mundo. It is apparent that, if the Court dismisses this case, the only legal recourse for Mundo to seek his desired relief is in Navajo Family Court. Although Mundo does not make this argument, the Court acknowledges that the Navajo forum may not provide a fully adequate substitute for the relief he seeks. Nevertheless, the Tenth Circuit has upheld dismissals in cases presenting even harsher results -- where the plaintiff has no alternative forum at all. In Citizen Potawatomi Nation v. Norton, the Tenth Circuit affirms dismissal despite the Tribe's sovereign immunity foreclosing the plaintiff's only possible forum -- federal court. See 248 F.3d at 1001. The Tenth Circuit reasons:

> We have noted the "strong policy favoring dismissal when a court cannot join a tribe because of sovereign immunity." *Davis*, 192 F.3d at 960. The district court relied on this factor as a reason for holding that the absent tribes were indispensable. . . . Moreover, the district court ruled that the absent tribes would suffer substantial prejudice if the action proceeded without them and there was no way to lessen that prejudice. . . . Here we do not believe the district court abused its discretion by relying on these factors as reasons for dismissing the action, even though the district court's decision meant there is no way to challenge the conduct in question.

- 24 -

Citizen Potawatomi Nation v. Norton, 248 F.3d at 1001. Likewise, here, the Navajo Nation's sovereign immunity and indispensable interest compel dismissal even if that outcome leaves Mundo with what he perceives to be a less favorable forum. As the Tenth Circuit recognizes in Citizen Potawatomi Nation v. Norton, the Court recognizes the harshness of this result but the principle that the protection of Tribal sovereignty outweighs a plaintiff's interest in obtaining relief binds the Court. See 248 F.3d at 1001.

Mundo makes two arguments against dismissal. First, he asserts that courts "do not automatically dismiss whenever a tribe or other entity with a potential interest is not named in a lawsuit." Response at 7. Instead, he maintains that courts must balance prejudice, the ability to shape relief, and the availability of alternative remedies before dismissing the case. See Response at 7. Mundo cites no authority and does not explain how those equities favor his position. Because the Court has undertaken that analysis above and found each factor to favor dismissal, this argument fails. Second, Mundo argues that his Amended Complaint, which names individual officials in their official capacities under Ex Parte Young, "cures any alleged indispensability, since the tribal officials' defense or participation will ensure that all relevant interests are considered." Response at 8. This argument is now moot, however, because, in his Omnibus Notice, Mundo withdraws his Motion for Leave to File an Amended Complaint. See Omnibus Motion at 1.

Accordingly, the Court concludes that the rule 19(b) factors weigh strongly in favor of dismissal. The Navajo Nation's sovereign immunity prevents its joinder, and in equity and good conscience, this action cannot proceed in its absence. The Court therefore grants Vandever's Motion to Dismiss.

III.    **THE COURT DOES NOT HAVE JURISDICTION OVER THIS CASE, BECAUSE MUNDO HAS NOT EXHAUSTED HIS TRIBAL COURT REMEDIES**.

The Supreme Court establishes in Iowa Mutual that, "[a]t a minimum," federal court review of questions decided by the Tribal courts should await tribal appellate courts' final action. 480 U.S. at 17. If the Tribal appeals court affirms Tribal court jurisdiction, the "petitioner may challenge that ruling in the District Court." Iowa Mutual, 480 U.S. at 19. Then, unless a federal court determines that the Tribal court lacks jurisdiction, "proper deference to the tribal court system precludes relitigation of issues raised . . . and resolved in the Tribal Courts." Iowa Mutual, 480 U.S. at 19 (ellipses added). Here, Mundo does not exhaust his Tribal court remedies, because his motion to reconsider the 2025 Navajo MTD Order currently is pending in Navajo Family Court. See Respondent's Motion for Reconsideration or Clarification at 1 (dated February 5, 2025), filed February 7, 2025 (Doc. 1-5)("Motion for Reconsideration"). Nor has Mundo appealed the 2025 Navajo MTD Order to the Supreme Court of the Navajo Nation, which reviews Navajo family court appeals. See, e.g., In re A.M.K., 9 Am. Tribal Law 191, 191, 2010 WL 4159270 at *1 (2010). The Supreme Court of the Navajo Nation, furthermore, regularly reviews Navajo Family Court decisions on Tribal jurisdiction. See, e.g., Bahe v. Platero, 11 Am. Tribal Law 104, 108-111 (2012)(No Westlaw Citation)(reviewing the Crownpoint Family Court's conclusion that it lacks Tribal jurisdiction over a child custody matter in New Mexico); Morris v. Williams, 2 Am. Tribal Law 478, 7 Nav. R. 426, 479 1999 WL 34973777 (concluding that the Navajo Family Court has jurisdiction over a DAPA proceeding). In his Response, Mundo challenges the Navajo Family Court's conclusion that it has jurisdiction over the DAPA petition. See Response at 6. This circumstance is the one that the Supreme Court considers in Iowa Mutual when the Supreme Court explains that "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty." 480 U.S. at 18 (citing Montana v. United States, 450 U.S.

544, 565-66 (1981); <u>Washington v. Confederated Tribes of Colville Indian Reservation</u>, 447 U.S. 134, 152-53 (1980); <u>Fisher v. District Court</u>, 424 U.S., 382 387-89 (1976)).  Additionally, the "proper respect for tribal legal institutions requires that they be given a 'full opportunity' to consider the issues before them and 'to rectify any errors.'" <u>Iowa Mutual</u>, 480 U.S. at 16 (quoting <u>National Farmers Union Ins. Cos. v. Crow Tribe</u>, 417 U.S. 845, 857 (1985)).  Mundo has not given the Navajo Family Court nor the Supreme Court of the Navajo Nation the "full opportunity" to review the question of Tribal jurisdiction and to "rectify any errors" if they exist.   <u>National Farmers Union Ins. Cos. v. Crow Tribe</u>, 417 U.S. at 857.  The Court therefore dismisses Mundo's Complaint for failure to comply with the Tribal court exhaustion requirements.

Mundo argues, however, that the Tribal court exhaustion doctrine is inapplicable, because Vandever invokes the Tribal court in bad faith.  <u>See</u> Response at 5.  The Supreme Court states: "We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith." <u>Nat'l Farmers Union Ins. v. Crow Tribe</u>, 471 U.S. 845, 856 n.21 (1985).  Rather than pointing to specific facts that demonstrate Vandever's bad faith, however, Mundo merely asserts this standard applies, because Vandever misuses the Tribal process for "forum-shopping" or "harassment."  Response at 5.  Given, however, that since Vandever and the two daughters are Navajo Nation members and reside on Navajo land, her decision to file in Navajo Family Court does not constitute bad faith.  Mundo does not provide context to challenge this conclusion.  Furthermore, Vandever is not the party attempting to benefit from specific forums, as Mundo has invoked three separate forums: Florida State court, New Mexico State court, and federal district court.  Because Mundo has not allowed the Navajo Family Court or the Supreme Court of the Navajo Nation the opportunity fully to address and rectify any jurisdictional issues, as <u>Iowa Mutual</u> requires, the Court dismisses Mundo's Complaint for failure to exhaust Tribal court remedies.  The Court therefore grants the MTD.

**IV.    THE COURT SHOULD NOT ADDRESS VANDEVER'S FAILURE TO STATE A
<u>CLAIM ARGUMENT</u>.**

Because the Court has already determined that dismissal is proper under rule 19 because the Navajo Nation is an indispensable party, and because dismissal is warranted for Mundo's failure to exhaust Tribal court remedies, the Court lacks jurisdiction over the case. Lacking jurisdiction, the Court should not address Vandever's merits argument regarding Mundo's failure to state a claim. These two grounds for dismissal are dispositive of the matter. Therefore, any further analysis of the failure to state a claim issue is not appropriate.

**IT IS ORDERED** that: (i) Defendant Vandever's Motion to Set Aside Entry of Default as Void and to Dismiss Due to Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, Failure to State a Claim for Relief and Failure to Exhaust Tribal Remedies, filed April 1, 2025 (Doc. 39), is granted; (ii) the entry of default is set aside; (iii) the Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief, filed February 7, 2025 (Doc .1), is dismissed without prejudice; (iv) the case is dismissed without prejudice; and (v) a separate Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Calvin Lee
CJ Lee & Associates PC
Gallup, New Mexico

    *Attorneys for the Plaintiff*

Tierra Marks
Veronique Richardson
Barnhouse Keegan Solimon & West LLP
Los Ranchos de Albuquerque, New Mexico

    *Attorneys for the Defendant Shelby Vandever*

Colin Bradley
Zwillinger Wulkan PLC
Phoenix, Arizona

*Attorneys for the Defendant Crownpoint Navajo Family Court/Navajo Nation*